**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| BENJAMIN C. MATTHEWS,<br>Plaintiff,<br><br>v.<br><br>MOLSON COORS BEVERAGE COMPANY and MOLSON COORS BEVERAGE COMPANY USA, LLC,<br><br>Defendants. | Case No. __________________<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1. Benjamin C. Matthews ("Matthews") brings this action under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA). He challenges his selection for termination and exclusion from a substantially overlapping director position. He alleges that the subsequent reclassification of his separation as justified by misconduct and the withdrawal of severance eligibility and related benefits provide further evidence of pretext and caused economic and personal harm. He also alleges retaliation for raising a sex-discrimination concern with his supervisor before the termination and nonselection decisions.

2. Matthews is an experienced and accomplished male supply-chain logistics[1] executive who, at the beginning of 2025, was 58. Matthews alleges that various decision-makers improperly used his age and sex in deciding who would continue performing his logistics work. Matthews's responsibilities included non-alcoholic beverage distribution strategy, and his

[1] Here, "logistics" refers to the broad business process of planning, implementing, and controlling the storage, movement, and flow of goods, services, and information from the point of origin to the point of consumption. "Distribution" refers to a specialized subset of logistics focused specifically on the outbound movement, storage, and delivery of finished goods to wholesalers, retailers, or end-consumers.

supervisor acknowledged strong financial and operational results. Despite his long record of proficiency in supply chain logistics, including distribution of non-alcoholic beverages, management told Matthews he was unqualified for a new "Director Logistics - Beyond Beer" position before it was posted and ultimately selected a comparatively unqualified woman who, on information and belief, was in her mid-to-late forties.

## PARTIES

3. Plaintiff Matthews maintains his permanent family home in Bettendorf, Iowa, and temporarily resides in League City, Texas, while working under a two-year employment contract in the Houston area. During the relevant Molson Coors employment, Matthews's assigned corporate worksite was Milwaukee, Wisconsin. He regularly worked in that office on Mondays, Tuesdays, and Thursdays; worked remotely from his St. Francis, Wisconsin condominium on many Wednesdays; and generally worked remotely from Bettendorf on Fridays.

4. Defendant Molson Coors Beverage Company USA, LLC ("MC USA"), formerly known as MillerCoors LLC, conducts business and maintains corporate operations in Milwaukee, Wisconsin. Matthews's March 31, 2022 promotion letter identified "MillerCoors LLC" as his employer. The Company's February 12, 2026 position statement to the Equal Employment Opportunity Commission (EEOC) identified "MC USA" as the same entity formerly known as MillerCoors LLC and stated that it employed approximately 7,000 individuals nationwide.

5. Defendant Molson Coors Beverage Company ("MCBC") is MC USA's parent and was the named respondent in Matthews's EEOC charge. Matthews's 2025 Form W-2 identifies MCBC as his employer and lists its address as 3939 West Highland Boulevard, Milwaukee, Wisconsin 53208. The March 6, 2025 decision letter likewise identified MCBC as his employer and communicated the reclassification of his separation and withdrawal of benefits. Sarah Miracle,

self-identified as “Assistant General Counsel - Employment Law” for MCBC, also submitted the February 12, 2026 EEOC response defending the employment and benefits decisions challenged here.

6. On information and belief, MC USA employed Matthews and administered his Milwaukee employment through the supervisory and human-resources personnel identified herein. On information and belief, defendant MCBC also exercised employment authority over Matthews and directly participated in the challenged decisions, including the March 6 reclassification and benefits withdrawal communicated in its name by Attorney Miracle. These allegations rest on the employment and payroll documents, the decision communications, and MCBC’s account of its own actions in the EEOC response, not merely on ownership or shared branding. The precise allocation of employment and decision-making authority between the entities is within Defendants’ records. Here, Matthews pleads their respective responsibility in the alternative to the extent necessary under Federal Rule of Civil Procedure 8(d).

7. At all relevant times, each Defendant against which a claim is asserted was, on information and belief, an employer engaged in an industry affecting commerce within the meaning of Title VII and the ADEA, with at least twenty employees for each working day in each of twenty or more calendar weeks in the relevant current or preceding calendar year. Supervisory, human-resources, or legal personnel undertook the challenged acts while acting within actual or delegated employment authority. References below to Molson Coors or Defendants concern each entity to the extent of its own conduct or conduct legally attributable to it.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(c). This action arises under Title VII and the

ADEA.

9. This Court has specific personal jurisdiction over each Defendant because this action arises from its employment-related activities in Wisconsin. MC USA maintained and administered Matthews's Milwaukee employment. On information and belief, MCBC exercised the employment authority described above in connection with that Wisconsin employment, including communicating the March 6 decision to Matthews at his Wisconsin residence. The relevant supervisory and human-resources communications concerned work performed in Milwaukee and a successor position located there.

10. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2). Matthews performed substantial work in Milwaukee; Mueller and Nicholas Warrichaiet communicated the February 17 decisions to him at the corporate office at 3939 West Highland Boulevard, Milwaukee; and Matthews received the March 6 decision in St. Francis, Wisconsin. The "Beyond Beer" position would have been based in the same Milwaukee office under the same hybrid employment and decision-making arrangement among MC USA and MCBC. The events in Milwaukee County and the worksite support assignment to the Milwaukee Division.

## ADMINISTRATIVE PROCEEDINGS

11. Matthews first contacted the EEOC and made intake submissions concerning the challenged employment actions beginning in August 2025. He signed EEOC Form 5A on December 14, 2025 and transmitted it to the EEOC's designated Milwaukee intake address on December 15, 2025. The EEOC accepted and processed Charge No. 443-2025-04150 against Molson Coors Beverage Company. The charge alleged sex and age discrimination and retaliation

arising from the separation, wrongful nonselection for the successor role, and wrongful withdrawal of severance eligibility post-separation.

12. The challenged separation was first communicated to Matthews on February 17, 2025, not February 4, as MCBC later asserted through Miracle in the March 6 benefits-withdrawal letter. Matthews's February 25, 2025 email to Miracle contemporaneously identified February 17 as the date he received notice of the position elimination and the proposed release. The three-hundredth day after February 17 was Sunday, December 14, 2025; the next business day was December 15, 2025, when Matthews transmitted his signed charge. The subsequent nonselection and March 6 benefits decision likewise fell within the applicable charge period. The earlier performance history is alleged as background and as evidence bearing on the timely challenged decisions.

13. The EEOC investigated the employment, selection, and severance allegations, including the Beyond Beer application chronology. Although the charge named MCBC, Miracle's response expressly identified MC USA, described its workforce and Matthews's employment, and defended the challenged decisions using MC USA employment and policy records. On information and belief, MC USA had notice that its employment-related conduct and practices were at issue and an opportunity, through the legal personnel furnishing that defense, to participate in the agency proceedings and efforts toward voluntary resolution. That inference rests on the response's express treatment of MC USA and the challenged employment, not merely the parent-subsidiary relationship.

14. The EEOC issued its Determination and Notice of Rights on July 13, 2026, and Matthews and his counsel received the closing notification and notice on July 13, 2026. Matthews received no earlier dismissal, right-to-sue notice, or notification of the availability of such a notice.

This action is brought within the applicable filing period. More than sixty days have elapsed since the charge was filed. The administrative prerequisites applicable to the claims asserted here have been satisfied.

## EMPLOYMENT AND PERFORMANCE

15. Molson Coors hired Matthews on April 20, 2020 as "Senior Manager Partnerships" in its supply-chain function and promoted him to "Director of Distribution Strategy and Optimization," effective April 18, 2022. He reported to Daniel Mueller, Vice President of Distribution.

16. Matthews was over forty during the pertinent events alleged herein. The age disclosure supplied with the 2025 separation materials listed the employee in his director position as 58 as of January 31, 2025. Defendants knew his age through their employment records and management's working relationship with him.

17. His responsibilities included distribution strategy and optimization, import and export logistics, transportation and warehouse partnerships, third-party distribution operations, non-alcoholic route-to-market (RTM) distribution strategy, cost-reduction projects, and development of employees and cross-functional teams. His earlier logistics work at Cargill included direct-to-retail distribution and Commonwealth Handling Equipment Pool ("CHEP") pallet systems.

18. Matthews received favorable performance ratings for 2020 through 2022. In early 2022, he received the "Partner of the Year" award based on peer nominations and senior executive concurrence.

19. Matthews's perceived effectiveness reportedly changed in 2023. In January 2024, Mueller gave Matthews a "Developing" rating for 2023, based on anonymous concerns about collaboration and work style. Matthews disputed the 2023 assessment and requested specifics about the anonymous feedback. However, Matthews was never permitted to see or respond to the anonymous feedback.

20. A human-resources-directed 180-degree "feedback review" dated April 18, 2024 documented substantial favorable feedback about Matthews's demonstration of company values, operational knowledge, and results. It also included constructive criticism of his communication and collaboration style. Matthews addressed the identified development opportunities and disputed the weight later placed on seemingly routine recommendations for improvement.

21. Six months later, on October 21, 2024, Mueller issued a written warning to Matthews concerning Steve Hirsch's attendance at a supplier meeting after Hirsch had moved to a department other than Distribution. Matthews responded that Hirsch's new department leader, Erin McGraw, had approved Hirsch's attendance at the supplier meeting and agreed to fund the travel after being told Mueller had declined to fund it from the Distribution budget. Matthews acknowledged that he should have told Mueller about McGraw's separate approval but disputed that he misrepresented Mueller's decision or abetted unauthorized travel. As Hirsch's then-current department manager, McGraw, not Mueller, was the decision-maker duly empowered to approve Hirsch's travel.

22. Matthews's work during 2024 included significant distribution savings, import and export freight improvements, and effective management of third-party logistics providers. The Service and Advocacy for Latinos United for Development ("SALUD") employee resource group

at Molson Coors selected Matthews to speak in its "Voices in Values" series about the company's "Be Bold and Decisive" value, recognizing him as a leader in exhibiting company values.

23. Matthews's November 18, 2024, goal update to Mueller and his 2024 year-end performance materials documented responsibility for various logistics activities, including non-alcoholic route-to-market and channel strategy. His year-end assessment described a distribution proposal for the "Naked Life" non-alcoholic project and his ability to expand non-alcoholic distribution.

24. In the 2024 year-end review delivered in January 2025, Mueller again rated Matthews "Developing." Mueller acknowledged and praised Matthews's financial and operational results, Latin American market knowledge, and contributions to savings. However, Mueller again rated him "Developing" based on unspecified subjective perceptions of working style, after acknowledging improvement from the previous year.

25. Matthews disputed the use and weight ascribed to unspecified anecdotal assessments, identified countervailing favorable feedback, and requested that he be evaluated against stated company values and documented, objectively verifiable work. He alleges that the responsible decision-makers nonetheless narrowly focused on unspecified personality-based assessments when making the discriminatory employment decisions described below.

## EMPLOYMENT OBJECTIVES AND THE CHALLENGED DECISIONS

26. In late 2022, Molson Coors rolled out representation objectives and related diversity initiatives to its supply-chain organization, including Distribution. During 2022 through 2024, Molson Coors communicated objectives to increase female representation in its workforce

and leadership. Those objectives appeared in supply-chain and distribution planning materials and in Matthews's assigned performance goals.

27. Distribution strategy materials included diversity, equity, and inclusion (DEI) targets and the direction to focus on identifying young, diverse talent. Matthews's 2024 "Advance Our Culture" goal directed increased participation by qualified persons of color and women in Distribution. Matthews's supervisor and the human-resources personnel involved in the challenged decisions operated within that goal-setting process.

28. Before the February 2025 decisions, when Mueller communicated the objectives for Matthews and his team to promote and hire more women, Matthews privately raised with Mueller his concern that those objectives posed a risk of wrongful sex discrimination against male employees. Mueller responded, in sum and substance, that these were company goals coming from higher management. Matthews raised his concern about the use of sex in employment decisions in good faith and out of concern for fair treatment of all employees, regardless of age or gender, rather than simply disagreeing with a business strategy.

29. In a sworn affidavit dated December 19, 2025, former senior executive Christian Wensel confirmed the quantitative female and person-of-color representation goals established during 2022 through 2024 and their inclusion in the "Global Leadership Bonus" program.

30. Matthews alleges that the responsible decision-makers applied age- and sex-conscious objectives in a manner that wrongfully discontinued his employment and excluded him from consideration for the successor director position. This inference rests on the objectives' connection to his department and management, his early exclusion, the overlap in duties, the selected candidate, and the inconsistent explanations alleged below.

## RESTRUCTURING AND EXCLUSION FROM THE SUCCESSOR POSITION

31. During 2023 and 2024, Matthews and members of his distribution management team were tasked with evaluating a proposed traditional "boxcar" (*i.e.*, non-intermodal) rail and cross-dock distribution strategy (the "non-intermodal strategy"). After questions arose concerning the business justification for the non-intermodal strategy, Matthews referred the matter to Internal Audit and Ethics and Compliance on January 27 and January 30, 2025, respectively. In furtherance of the ensuing internal review of the non-intermodal strategy, Matthews assembled supporting records and identified witnesses for the investigators.

32. The Ethics and Compliance review remained pending on February 17, 2025, when Matthews was notified that his position would be eliminated. Matthews does not allege that his reluctance to endorse the non-intermodal strategy, standing alone, constituted activity protected by Title VII or the ADEA. The internal review is alleged here principally because it explains the circumstances under which Matthews assembled and handled records that Defendants later cited in support of the March 6, 2025 misconduct characterization and withdrawal of benefits.

33. On February 17, 2025, while the Ethics and Compliance investigation of the non-intermodal strategy remained pending, Mueller and human-resources representative Nicholas "Nick" Warrichaiet told Matthews at the Milwaukee corporate office that his position was being eliminated and his last day of employment would be February 28, 2025. Matthews was not notified earlier, on February 4, the date Miracle later asserted in her March 6 letter.

34. At the February 17 meeting, Mueller and Warrichaiet also told Matthews that he lacked the skills for the new Director Logistics - Beyond Beer role. Mueller cited a lack of CHEP pallet and direct-to-consumer or e-commerce experience as deficiencies, notwithstanding

Matthews's substantial experience in those areas. Mueller's "unqualified" assessment was communicated before the position was posted for applications and before Matthews applied.

35. That afternoon, Chief Supply Chain Officer Brian Erhardt announced the new Beyond Beer director position reporting to Mueller and also reported Matthews's departure from the organization. The announcement identified the new position's reporting structure and analyst roles and invited employees to apply.

36. An Andrew Woelky email sent February 17, 2025 memorialized a discussion in which Mueller reportedly said Matthews's role would continue with added non-alcohol distribution responsibilities and repeatedly assured that Matthews's separation was unrelated to performance or work-related issues. Although the email separately labels the discussion February 14, Matthews recalls seeing Woelky immediately before and after his meeting with Mueller on February 17, not before. Matthews alleges that the discussion memorialized by Woelky occurred on February 17, while acknowledging the different date written in the email. On February 17, Mueller likewise told Fracht FWO, a freight forwarder, that Matthews's departure was not performance-related, but rather was necessary because Matthews lacked the skills for the new distribution position, which included non-alcoholic beverages.

37. The new Director Logistics - Beyond Beer role retained substantial responsibilities Matthews had performed, including transportation and distribution strategy, management of third-party warehouses and logistics providers, and cost reduction. Matthews already had non-alcoholic route-to-market responsibilities. The posting also emphasized e-commerce and final-mile distribution. Matthews does not allege that all duties in the new position were identical to duties in Matthews's purportedly phased-out position; rather, he alleges that the new title and portfolio emphasis did not eliminate the substantial continuing functions for which he was qualified.

38. The internal posting for Director Logistics - Beyond Beer, Requisition ID 34195, is marked as posted on February 20, 2025. It identifies Milwaukee, Wisconsin, as the work location and describes a hybrid arrangement entailing three in-office days per week. Matthews applied before his February 25 email to Warrichaiet, which confirmed his application, provided his résumé, and explained how his experience met the requirements despite the earlier assessment that he was unqualified. Defendants acknowledged receiving and reviewing his application during the EEOC proceedings.

39. Matthews possessed substantial logistics, distribution, and management experience relevant to the role, including direct-to-retail distribution and CHEP pallet use at his previous employer, Cargill. A published account identified him as a Cargill supply-chain representative in connection with CHEP pallet systems. Defendants did not interview Matthews or seek clarification of that prior experience before excluding him from consideration.

40. Defendants later said they reviewed 161 applications, interviewed four candidates, and excluded Matthews for lack of the direct-to-retail, consumer, and e-commerce experience they sought. Matthews alleges pretext because the rejection preceded his application, his experience contradicted the claimed lack of direct-to-retail and CHEP experience, and his work substantially overlapped the new role.

41. After excluding Matthews from consideration, Defendants selected Corey Theune, a woman, for the Beyond Beer director role. On information and belief, Theune was in her mid-to-late forties when selected in 2025 and was substantially younger than Matthews, who was 58 as of January 31, 2025. Matthews's age estimate of Theune is based on information separately supplied by colleagues, including James Cusick and Jerry Campanucci, after the selection, as well as publicly available online information, rather than on appearance alone. Defendants stated during

the EEOC investigation that Theune was over forty; her exact age is reflected in discoverable personnel records.

42. Matthews does not recall receiving a contemporaneous rejection notice. He learned of Theune's selection through company and supplier contacts during the summer of 2025 and identified her to the EEOC in April 2026 when answering the investigator's questions.

43. In the EEOC proceedings, Defendants asserted that individual performance, company values, behaviors, and potential informed selection of roles for elimination. Matthews alleges that putative reliance on those assessments contradicts Mueller's contemporaneous assurance that his departure was unrelated to performance and supports an inference of discriminatory selection.

44. Matthews's position was the only one eliminated on Mueller's Distribution team, although other Molson Coors and ZOA Energy[2] positions were also eliminated. His employment officially ended February 28, 2025.

45. Recruiting materials circulated in September 2026 demonstrate that substantial portions of Matthews's former responsibilities continued under Theune under the "Beyond Beer" rubric. For example, the recruiting materials indicate that candidates should have import/export experience for a logistics position supporting that function, describing Matthews to a tee. As such, Matthews relies on the overlap of duties, the contemporaneous description of the successor role, and the continued recruiting as evidence bearing on Defendants' explanation that his work and relevant skills were no longer needed. He does not allege that the later advertisement alone

[2] ZOA Energy is a non-alcoholic energy drink brand co-founded in 2021 by actor and former wrestler Dwayne "The Rock" Johnson, Dany Garcia, Dave Rienzi, and John Shulman. In November 2024, MCBC acquired a 51% majority ownership stake in ZOA Energy, taking control of its marketing, retail, and direct-to-consumer sales.

establishes an identical position; he alleges that the September 2026 posting is inconsistent with Defendants' position before the EEOC concerning the continuing work and the qualifications relevant to it.

## SEVERANCE AND RELATED BENEFITS

46. On February 17, 2025, Defendants presented to Matthews a General Waiver and Release Agreement offering twenty-six weeks of severance pay totaling $87,094.80 and specified related benefits, subject to the agreement's terms. Section 17 advised Matthews to consult with an attorney before signing.

47. Before his employment ended, at the direction of and in coordination with the Ethics and Compliance investigators, Matthews gathered records and assembled binders pertinent to the proposed non-intermodal strategy. The investigators received and later returned those binders to him. In keeping with his employer's admonition that he should consult legal counsel, Matthews also transmitted materials related to the General Waiver and Release to his personal email account for confidential consultation with outside counsel concerning the termination of his employment pursuant to that proposed release, including employment and separation documents, performance materials, and records concerning his internal complaint and the elimination of his position. He disputes Defendants' characterization of those activities as "misconduct" or ill-intentioned.

48. To be sure, the investigative binder work and the admonition in the release to consult counsel did not constitute an express company authorization for every transmission to a personal email account. However, Matthews's interview-preparation materials included a skeletal interview guide and transportation-market report, and Kevin Harris, Vice President of Supply Planning, had suggested that Matthews populate and study the interview guide. Matthews alleges

that the purpose and context of his document handling, together with the timing and circumstances of the March 6 decision, support the inference that Defendants' characterization of his actions as "misconduct" is pretextual.

49. On February 25, 2025, Matthews emailed Miracle seeking modifications to the proposed release agreement and disputing his abrupt and unexplained separation. In a separate message, Warrichaiet confirmed that Legal had shared Matthews's note with him and stated that the severance terms would not change. Matthews does not characterize the February 25 email as expressly asserting age or sex discrimination; his earlier, verbal sex-discrimination objection to Mueller is separately alleged above.

50. On February 26, 2025, Ethics and Compliance reported finding no policy violation or retaliation and stated that the final performance rating and last day of employment were managerial or business decisions outside its delegated scope of review. Matthews disputes the later characterization that this investigation established the legitimacy of the performance assessments. Based on information subsequently provided by Woelky, Hirsch, and other current and former Molson Coors employees, Matthews alleges that investigators did not interview a single witness identified as having firsthand knowledge of his concerns.

51. Matthews signed the proposed release on March 3, 2025. Section 23 provided a seven-day revocation period and stated that the agreement would not become effective or binding until the period expired without revocation.

52. On March 6, 2025, Miracle issued a letter alleging improper printing and emailing of company information, retroactively classifying the separation effective February 28, 2025, as misconduct-based, and withdrawing severance eligibility, an incentive payout, and extended health benefits. Matthews received that communication by email and physical mail while at his St.

Francis, Wisconsin residence. The letter stated that the proposed release had not yet become effective before it was withdrawn. It also used February 4, 2025, as the notice date, which Matthews disputes.

53. Matthews alleges that the erroneous notice date mischaracterized the chronology of document collection, including work undertaken in collaboration with Ethics and Compliance for their ongoing internal investigation of the non-intermodal strategy. He was not afforded a meaningful opportunity to answer the misconduct accusation before the benefits decision. He alleges that the stated rationale was pretextual, supports an inference that Defendants' explanations for the February 17 termination and nonselection were not the true reasons for those decisions, and caused substantial economic harm.

54. On March 9, 2025, Matthews emailed Legal Specialist Kelly Rick expressly revoking the proposed release and his March 3 signature under Section 23. Rick acknowledged receipt on March 10. As such, the proposed release did not become effective and does not bar the claims asserted here. Matthews did not subsequently withdraw that revocation or enter a replacement agreement, and the withdrawn severance benefits were not reinstated or paid.

**HARM AND MITIGATION**

55. The challenged decisions caused losses of wages, incentive compensation, health coverage and other employment benefits, and employment opportunities. Matthews seeks compensation for severance and benefit losses only to the extent recoverable under the statutory claims and supported by proof of causation and entitlement. He does not seek to enforce the revoked release as an effective contract, and he does not seek duplicate recovery for the same loss.

56. After the benefits withdrawal, Matthews incurred additional costs to continue medical and dental coverage, and claims for covered family members, including children, were

initially denied. He recalls paying approximately $3,000 per month for about five months to continue the prior coverage. Here, he seeks only the proven incremental expense and other recoverable losses after accounting for ordinary employee contributions, reimbursements, replacement coverage, and any overlapping benefit recovery.

57. Matthews sought replacement work after learning of his separation and began employment with Frontier Logistics on June 2, 2025. He reports an annual salary of $200,000 plus a discretionary bonus, with less favorable health benefits and no employer retirement plan or matching benefit. That employment required him to live in Texas apart from his permanent family home. His request for economic relief is subject to actual interim earnings, benefits, mitigation, and legally required offsets.

58. Matthews also suffered emotional distress and alleges resulting physical-health injury. Following the challenged events, he was diagnosed with insomnia, anxiety, and hypertension and has received treatment. He alleges that the challenged employment practices and actions, and the resulting financial and family disruption, caused or aggravated those conditions. He seeks compensation for his own proven injuries and expenses under Title VII, not separate personal-injury awards for family members.

**COUNT I**
**AGE DISCRIMINATION UNDER THE ADEA**

59. Matthews incorporates all preceding allegations as if fully set forth herein.

60. At all times pertinent hereto, Matthews was over forty and a seasoned logistics professional qualified for his director position and the new, substantially overlapping "Beyond Beer" role. The ADEA, 29 U.S.C. § 623(a)(1), prohibits adverse employment decisions because of age.

61. The responsible Defendants discriminated against Matthews because of age by selecting him for termination and excluding him from the successor role. Age was a but-for cause of those challenged actions: absent consideration of age, the responsible Defendants would not have taken them.

62. The age-based inference is supported by Defendants' stated objective of identifying "young" talent, Matthews's premature exclusion, continuation of substantial portions of his responsibilities, selection of a substantially younger person, and Defendants' conflicting explanations. Matthews alleges that the asserted reasons were pretexts for age discrimination.

63. As a result, Matthews lost compensation, benefits, and employment opportunities. On information and belief, the responsible decisionmakers knew that using age in these decisions violated federal law or recklessly disregarded that prohibition. He seeks the relief authorized by 29 U.S.C. § 626, including liquidated damages upon proof of willfulness.

**COUNT II**
**SEX DISCRIMINATION UNDER TITLE VII**

64. Matthews incorporates all preceding allegations as if fully set forth herein.

65. Matthews is male and was qualified for his director role and the successor position. Title VII, 42 U.S.C. § 2000e-2(a), prohibits discrimination in discharge, hiring, compensation, and other employment terms because of sex.

66. The responsible Defendants discriminated against Matthews because he is male by selecting him for termination and excluding him from the successor role. Sex was a motivating factor in those decisions, and Matthews alleges they would not have occurred absent consideration of his sex.

67. The sex-based inference is supported by departmental female-representation goals and their relationship to management incentives, his premature exclusion, substantial overlap of the positions, selection of a woman, and the inconsistent explanations. Matthews alleges that the asserted reasons were pretexts for sex discrimination.

68. As a result, Matthews sustained economic loss, emotional distress, and other compensable harm. On information and belief, responsible managerial personnel acted with malice or reckless indifference to his federally protected rights despite their knowledge of equal-employment obligations. He seeks the legal and equitable relief authorized by Title VII and 42 U.S.C. § 1981a.

**COUNT III**
**RETALIATION UNDER TITLE VII**

69. Matthews incorporates all preceding allegations as if fully set forth herein.

70. By raising the concern described in paragraph 28, Matthews opposed what he reasonably and in good faith believed was the use of sex to disadvantage male employees in hiring and promotion. His private oral objection was protected opposition under 42 U.S.C. § 2000e-3(a), regardless of whether the opposed practice is ultimately found unlawful.

71. Mueller knew of the objection because Matthews made it directly to him. Mueller both communicated the employment objectives Matthews questioned and participated with Warrichaiet in the February 17 termination and pre-application exclusion decisions. The new position reported to Mueller.

72. Defendants subsequently ended Matthews's employment and excluded him from the successor position. Those acts were materially adverse. Matthews alleges that his opposition

was a but-for cause of those actions: absent that opposition, the responsible Defendants would not have taken them.

73. The retaliatory inference rests on Mueller's receipt of the objection to the objectives he conveyed, his participation in excluding Matthews before consideration of his application, the continuation of substantial duties under the successor role, and the inconsistent explanations concerning Matthews's qualifications and performance. Matthews alleges that the stated reasons masked retaliation for his objection. This count does not depend on the later-filed EEOC charge causing earlier events or on an assumption that every internal business complaint or document transfer was protected activity.

74. As a result, Matthews sustained economic loss, emotional distress, and other compensable injury. On information and belief, the responsible managerial personnel acted with malice or reckless indifference to his federally protected rights. He seeks the legal and equitable relief available under Title VII and 42 U.S.C. § 1981a, without duplicating relief under the other counts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Benjamin C. Matthews requests judgment in his favor against each Defendant found responsible and the following relief:

A. A declaration that the employment practices proved in this action violated Title VII and the ADEA;

B. Back pay, lost incentive compensation, the value of lost employment benefits, and other recoverable economic losses caused by the unlawful conduct, subject to applicable mitigation and offsets;

C. Reinstatement or placement in an appropriate position, or front pay in lieu thereof when appropriate;

D. Compensatory damages under Title VII for proven emotional distress, physical harm, and other recoverable injury, including related pecuniary losses, and punitive damages under 42 U.S.C. § 1981a, subject to the applicable statutory limitations;

E. Liquidated damages under 29 U.S.C. § 626(b) upon proof of a willful ADEA violation;

F. Correction of discriminatory or retaliatory separation classifications and employment records, and other appropriate equitable relief;

G. Reasonable attorneys' fees, recoverable costs, and prejudgment and post-judgment interest to the extent permitted, without duplicate recovery; and

H. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Matthews demands a jury trial on all issues so triable under Federal Rule of Civil Procedure 38.

Dated: October 8, 2026
Respectfully submitted,
*s/ Kent Maynard, Jr.*
Kent Maynard, Jr.
Illinois Attorney Registration No. 6205075
Attorney for Plaintiff Benjamin C. Matthews
Kent Maynard & Associates LLC
17 N. State Street, Suite 1730
Chicago, Illinois 60602
Telephone: 312-423-6586
Email: service@kentmaynard.com